No. 25-2089

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

RHODE ISLAND STATE COUNCIL OF CHURCHES; NATIONAL COUNCIL
OF NONPROFITS; SERVICE EMPLOYEES INTERNATIONAL UNION; MAIN
STREET ALLIANCE; CITY OF CENTRAL FALLS; CITY OF PAWTUCKET; CITY
OF PROVIDENCE; CITY OF ALBUQUERQUE; CITY OF BALTIMORE; CITY OF
COLUMBUS; CITY OF DURHAM; CITY OF NEW HAVEN; AMOS HOUSE; DR.
MARTIN LUTHER KING, JR. COMMUNITY CENTER; EAST BAY
COMMUNITY ACTION PROGRAM; FEDERAL HILL HOUSE ASSOCIATION;
THE MILAGROS PROJECT; UNITED WAY OF RHODE ISLAND; NEW YORK
LEGAL ASSISTANCE GROUP; BLACK SHEEP MARKET,

*Plaintiffs-Appellees*,

v.

BROOKE ROLLINS, in her official capacity as Secretary of the United States
Department of Agriculture; UNITED STATES DEPARTMENT OF
AGRICULTURE; RUSSELL VOUGHT, in his official capacity as Director of the
United States Office of Management and Budget; U.S. OFFICE OF
MANAGEMENT AND BUDGET; SCOTT BESSENT, in his official capacity as
Secretary of the United States Department of the Treasury; UNITED STATES
DEPARTMENT OF THE TREASURY; UNITED STATES OF AMERICA,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Rhode Island

**EMERGENCY MOTION FOR STAY PENDING APPEAL AND IMMEDIATE
ADMINISTRATIVE STAY**

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*
MICHAEL S. RAAB
LAURA E. MYRON
  *Attorneys, Civil Division, Appellate
    Staff*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES

INTRODUCTION ...................................................................................1

STATEMENT ........................................................................................4

    I.    The SNAP Program............................................................4

    II.   Funding for SNAP and Other USDA Programs...........................5

    III.  This Litigation .....................................................................6

ARGUMENT........................................................................................10

    I.    The District Court's Order Is Appealable....................................10

    II.   The District Court Erred When It Ordered USDA To Divert
          Funds From One Program To Support Another Program For
          Which Congress Has Failed to Appropriate Funding..............12

    III.  The Equities Favor a Stay .................................................22

CONCLUSION .....................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                       **Page(s)**

*Abbott v. Perez*,
   585 U.S. 579 (2018) ...................................................... 10

*Calvary Chapel of Bangor v. Mills*,
   984 F.2d 21 (1st Cir. 2020) ................................................ 11

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ........................................................17

*Dep't of Educ. v. California*,
   604 U.S. 650 (2025) ........................................................ 11

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021) ........................................................17

*Fryzel v. Mortgage Elec. Registration Sys.*,
   719 F.3d 40 (1st Cir. 2013) ........................................... 10-11

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ..............................................14, 15, 16

*Milk Train, Inc. v. Veneman*,
   310 F.3d 747 (D.C. Cir. 2002) ............................................ 15

*Nken v. Holder*,
   556 U.S. 418 (2009) .................................................. 10, 22

*Sampson v. Murray*,
   415 U.S. 61 (1974) ........................................................ 11

*San Francisco Real Estate Investors v. Real Estate Investment Trust of Am.*, 692
   F.2d 814 (1st Cir. 1982) .................................................. 11

*United States v. Wiley's Cove Ranch*,
   295 F.2d 436 (8th Cir. 1961) ............................................. 16

*Wildearth Guardians v. Kempthorne*,
   592 F. Supp. 2d 18 (D.D.C. 2008) ..................................... 16

**U.S. Constitution:**

U.S. Const. Art I, § 7, cl. 7 ................................................................21

**Statutes:**

Pub. L. No. 118-42, § 6, 138 Stat. 25 (2024) ........................................5

Pub. L. No. 119-4, § 1101(a), 139 Stat. 9 (2024) ................................5

5 U.S.C. § 701(a)(2) ...........................................................................13

7 U.S.C. § 612c *et seq.* ...................................................................2, 9

7 U.S.C. § 612c-6(b)(1) ..................................................................2, 20

7 U.S.C. § 2020.....................................................................................4

7 U.S.C. § 2013(a) ............................................................................4, 5

7 U.S.C. § 2013(a)(1) .........................................................................13

7 U.S.C. § 2014(a) ...........................................................................4, 13

7 U.S.C. § 2015(d) ...............................................................................7

7 U.S.C. § 2015(o)................................................................................7

7 U.S.C. § 2025(a) ................................................................................4

7 U.S.C. § 2027(b).............................................................................6, 14

7 U.S.C. § 2257(a) .............................................................................9, 15

28 U.S.C. § 1292(a)(1) .........................................................................10

**Regulations:**

7 C.F.R. § 271.7(a)-(h) ............................................................................6

7 C.F.R. § 271.7(d)(1) ............................................................................9

7 C.F.R. § 277.4(b) ........................................................................... 4-5

**Other Authority:**

Cong. Rsch. Serv., IF12193, *Farm and Food Support Under USDA's Section 32 Account*, available at
https://www.congress.gov/crs_external_products/IF/PDF/IF12193/IF 12193.5.pdf) ............................................................... 9, 19

U.S. Dep't of Agric., *Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025* (Oct. 10, 2025)
............................................................................................7

## INTRODUCTION

Congress has failed to appropriate funds to pay for Supplemental Nutritional Assistance Program ("SNAP") benefits for this fiscal year. Even after exhausting the entirety of the SNAP contingency reserve—a step that the Department of Agriculture ("USDA") took earlier this week in response to a temporary restraining order issued by the district court—there is only enough money to pay partial November SNAP benefits. This is a crisis, to be sure, but it is a crisis occasioned by congressional failure, and that can only be solved by congressional action.

Instead, a single district judge has devised his own solution: ordering USDA to cover the SNAP shortfall by transferring billions of dollars that were appropriated for different, equally critical food-security programs—and to do so within just one business day (*i.e.*, by today). This unprecedented injunction makes a mockery of the separation of powers. Courts hold neither the power to appropriate nor the power to spend. Courts are charged with enforcing the law, but the law is explicit that SNAP benefits are subject to available appropriations. Indeed, governing regulations contemplate that, in the event of a shortfall in funding, USDA

will direct the States to reduce their benefit allotments—which is precisely what USDA did this week.

The district court insisted that USDA find some way to fund SNAP, as a mandatory entitlement. But the statute specifically provides that SNAP payments shall not exceed the funds appropriated for the program. There is no lawful basis for an order that directs USDA to somehow find $4 billion in the metaphorical couch cushions.

The district court focused specifically on Section 32 of the Agricultural Adjustment Act Amendment of 1935, which appropriates revenue for various programs, *see* 7 U.S.C. § 612c *et seq.*, and ultimately ordered USDA to divert billions from Child Nutrition Programs that fund, among other things, school meals for millions of children. *See id.* § 612c-6(b)(1). But it cannot possibly be arbitrary and capricious for USDA to decline to raid school-lunch money to instead fund SNAP benefits—to starve Peter to feed Paul, as it were. Indeed, if every beneficiary of a mandatory spending program could run to court and force the agency to transfer funds from elsewhere, the result would be an unworkable and conflicting plethora of injunctions that reduce the federal fisc to a giant shell game. And it is no answer to assume, as the district court did, that

2

Congress will replenish the borrowed-from programs down the road. That is pure speculation and, under the Appropriations Clause, agencies cannot spend money based on wishful thinking. The district court also accused the President of bad faith for declaring that full SNAP benefits would not resume until the government reopens. But that was just stating a fact—the appropriation has lapsed, and it is up to Congress to solve this crisis. Unfortunately, the district court's short-sighted injunction has thrust the Judiciary into the ongoing shutdown negotiations and may well have the effect of extending the lapse in appropriations, exacerbating the problem that the court was misguidedly trying to mitigate.

For these reasons, the government is likely to succeed in overturning this order on appeal, and the equities and public interest cut strongly in favor of a stay to avoid forcing USDA to permanently impair the Child Nutrition Programs to the tune of $4 billion. And given the timeline imposed by the district court, this Court should grant an immediate administrative stay while it considers this motion.[1]  The government

---

[1] Defendants sought a stay pending appeal and administrative stay from the district court pursuant to Federal Rule of Appellate Procedure 8, which the court denied on November 6. *See* Minute Entry (Nov. 6, 2025).

requests either a stay or an administrative stay by no later than 4 PM today.[2]

## STATEMENT

### I.    The SNAP Program

SNAP is a federal nutrition assistance program administered by USDA at the federal level and implemented by state agencies at the local level. *See* 7 U.S.C. § 2020. Under the Food and Nutrition Act ("FNA") SNAP benefits "shall be furnished to all eligible households" that apply, *id.* § 2014(a) — but, crucially, subject to the availability of appropriations, *id.* § 2013(a). Eligible households receive their SNAP benefits on electronic benefit transfer (EBT) cards, *id.* § 2020, which may be used to purchase food from authorized retailers, *id.* § 2013(a). States are responsible for determining household eligibility and benefit amount and for loading benefits to EBT cards. *Id.* § 2020. States receive partial reimbursements for the costs of operating their SNAP programs (while the Federal Government pays for the entire cost of the benefits themselves). 7 U.S.C. § 2025(a); 7

---

[2] The government filed a notice of appeal within hours of the district court's oral issuance of the order and promptly filed this motion once the appeal was docketed.

C.F.R. § 277.4(b). The system of moving money from the Federal Government, to the States, to the beneficiaries' cards, to the processors, and finally to the retailers is complex. *See* Dkt. 14-2 ¶¶ 1-9, 16-28 (Decl. Patrick A. Penn).

## II.     Funding for SNAP and Other USDA Programs

Congress appropriates federal funds for SNAP during the annual appropriations process. *See* 7 U.S.C. § 2013(a) ("Subject to the availability of funds appropriated under section 2027 of this title, the Secretary is authorized to formulate and administer [SNAP]."). Although Congress fully funded the program through the end of the 2025 Fiscal Year, it has not provided an appropriation to fund the account for FY2026.

Congress has also provided, through a multi-year fund, emergency reserves for SNAP funding. *See* Pub. L. No. 118-42, § 6, 138 Stat. 25, 93-94 (2024); Pub. L. No. 119-4, § 1101(a), 139 Stat. 9, 10 (2025). These funds are to "be placed in reserve for use only in such amounts and at such times as may become necessary to carry out program operations." *Id.* Prior to this litigation, the long-term emergency fund currently sat at $5.25 billion. SNAP benefits amount to nearly $9 billion per month. Consequently, even if depleted, the reserves could not fully fund SNAP benefits for November.

The statute authorizing SNAP addresses a potential shortfall in appropriations for the program. Congress directed that "[i]n any fiscal year, the Secretary shall limit the value of those allotments issued to an amount not in excess of *the appropriation for such fiscal year*." 7 U.S.C. § 2027(b) (emphasis added). In the event of a shortfall of appropriated funds, the Secretary may issue a reduction, and "[n]otwithstanding any other provision of this chapter," Congress has specified that "the Secretary shall direct State agencies to reduce the value of such allotments to be issued to households certified as eligible to participate in the supplemental nutrition assistance program to the extent necessary to comply with the provisions of this subsection." *Id.* USDA regulations dictate how the reduction of benefits should be calculated and conveyed to the States. *See* 7 C.F.R. § 271.7(a)-(h).

## III.    This Litigation

At the end of September, the FY2025 appropriation for the SNAP account lapsed. As the lapse in appropriations continued unabated, USDA informed States that SNAP benefits were at risk. On October 10, USDA explained that "if the current lapse in appropriations continues, there will be insufficient funds to pay full November SNAP benefits for

approximately 42 million individuals across the Nation." U.S. Dep't of Agric., *Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025* (Oct. 10, 2025). That was and remains true.

On October 24, USDA formally "suspend[ed] all November 2025 benefit allotments until such time as sufficient federal funding is provided, or until FNS directs State agencies otherwise." Dkt. 1 at 19 (quoting "Oct. 24 Letter"). On October 30, 2025, Plaintiffs, a coalition of municipalities and non-profit organizations, filed suit. Dkt. 1. A similar suit was filed in the District of Massachusetts on October 28, 2025 by a coalition of States. As relevant here, plaintiffs brought claims under the APA challenging the suspension of November benefits.[3] They sought to "hold unlawful and set aside" the "suspension of November SNAP benefits" as contrary to law or arbitrary and capricious. Dkt. 1 ¶¶ 105-118. They sought to compel the agency to fund the allotments by depleting the SNAP contingency funds and by drawing on any other available source of funds.

---

[3] Plaintiffs also challenged the agency's decision to terminate existing waivers for work requirements for Able-Bodied Adults Without Dependents (ABAWD). *See* 7 U.S.C. §§ 2015(d), (o). Defendants are not seeking to stay the district court's order as it relates to waivers.

On October 31, 2025, the district court issued an oral ruling granting a temporary restraining order. *See* Minute Entry (Oct. 31, 2025) (ordering USDA "to distribute contingency funds"). The next day the district court issued a written order, explaining that "use of those contingency funds has now become required because available funding is necessary to carry out the program operations, i.e., to pay citizens their SNAP benefits." Dkt. 19 at 3-4. The court ordered that "[i]f the Government chooses to make the full payment, then it must do so by the end of the day [November 3]," and "[i]f the Government does [not] want to use its discretion to use funds available to make a full payment of SNAP benefits for November, then it must expeditiously resolve the administrative and clerical burdens it described in its papers" and make partial payments by November 5. *Id.* at 5-6.

On November 3, Defendants filed a status report and declaration laying out that USDA had complied with the order by authorizing full use of the SNAP contingency funds to pay partial benefits for November. USDA did so by issuing a memorandum to States and providing the tables required to calculate the reduced benefits available for each eligible household. Dkt. 24. That action completed USDA's direct, immediate steps

necessary to deplete the SNAP contingency fund.[4] 7 C.F.R. § 271.7(d)(1).
USDA also explained, in its declaration, why it had declined to transfer
billions of dollars from other food security programs.

Nonetheless, on November 6, the district court directed USDA to pay
the full November allotment by today (November 7). The court concluded
that USDA must cover the SNAP shortfall by transferring funds
appropriated by Section 32 of the Agricultural Adjustment Act
Amendment of 1935, 7 U.S.C. § 612c *et seq.*, which establishes a permanent
appropriation that stems from 30% of customs receipts on all imports from
the prior calendar year.  *See id.*; Cong. Rsch. Serv., IF12193, Farm and Food
Support Under USDA's Section 32 Account (last updated Aug. 5, 2025).
The vast majority of the Section 32 funding is designated for Child
Nutrition Programs, but that money can sometimes be discretionarily
transferred using USDA's general authority to transfer up to "7 per centum
of the amounts appropriated for any fiscal year" under 7 U.S.C. § 2257.
The court reasoned that it was arbitrary and capricious for USDA to

---

[4] In a footnote, the district court quibbled with USDA's calculation of available funds in the contingency fund. *See* Dkt. 34 at 7 n2. The agency's declaration makes clear how it calculated the $4.65 billion available to cover a partial November allotment. Dkt. 21-1 at ¶¶ 2-5.

decline to transfer billions of dollars from the Child Nutrition Programs to SNAP. Dkt. 34 at 18-21. USDA had explained that such a transfer would leave the Child Nutrition Programs at an untenable deficit, but the court insisted that USDA must solve the short-term crisis and leave the long-term worries for another day.  The court ordered full payment of the funds by Friday, November 7.

## ARGUMENT

A stay pending appeal is plainly warranted.  The government is likely to succeed on the merits, will face irreparable injury absent a stay, and the equities support a stay.  *See Nken v. Holder*, 556 U.S. 418, 426 (2009). Moreover, given the irreparable harm that will follow the district court's order, this Court should grant an immediate administrative stay while it considers the full motion.

## I.    The District Court's Order Is Appealable.

Although labeled a temporary restraining order, the district court's ruling is immediately appealable under 28 U.S.C. § 1292(a)(1). "[A]n order [that] has the 'practical effect' of granting or denying an injunction" "should be treated as such for purposes of appellate jurisdiction." *Abbott v. Perez*, 585 U.S. 579, 594 (2018); *see Fryzel v. Mortgage Elec. Registration Sys.*,

10

*Inc.*, 719 F.3d 40, 43 (1st Cir. 2013) ("The nature of an order is the product of its operative terms and effect, not its vocabulary and label."). This Court has explained that, in addition to an order's practical effects, the order's duration and the existence of adversarial presentation inform whether an order is subject to immediate appeal. *See Calvary Chapel of Bangor v. Mills*, 984 F.3d 21, 27 (1st Cir. 2020); *San Francisco Real Estate Investors v. Real Estate Investment Trust of Am.*, 692 F.2d 814, 816 (1st Cir. 1982). The Supreme Court has confirmed that where the "District Court's order carries many of the hallmarks of a preliminary injunction," it may be construed as such for appealability. *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (per curiam).

Here, the order's practical effect is profound. The court directed the government to distribute federal funds totaling billions of dollars, which will be quickly disbursed by States. Once that money is distributed, the funds will be depleted. Moreover, the extent of adversarial presentation provides a further basis for treating the order as a preliminary injunction. *See Sampson v. Murray*, 415 U.S. 61, 87 (1974). The district court considered substantive briefs on the merits and held multiple hearings. Nor can plaintiffs rely on the order's 14-day duration to defeat appellate

11

jurisdiction. Normally, the temporary nature of the order serves to preserve the status quo while the court considers the claims before it. Here, by contrast, the court issued orders with sweeping nationwide effect that will materially change the status quo. Limiting the duration of those orders does little to address its practical effects because it imposes affirmative obligations on the agency with consequences that will be difficult, if not impossible, to reverse.

## II. The District Court Erred When It Ordered USDA To Divert Funds From One Program To Support Another Program For Which Congress Has Failed to Appropriate Funding.

There is no basis in law for the district court's extraordinary injunction that directs an agency to deplete one program to fund another despite the lack of congressionally appropriated funds for the latter. This decision is not subject to APA review at all, and in any event USDA's determination not to handicap one program to backstop another was eminently reasonable. The district court's contrary reasoning is untenable and has no limiting principle.

A. USDA complied with the district court's original injunction by depleting the multi-year contingency fund to make a partial payment of November SNAP benefits but declined to transfer billions of dollars from

other food-security programs, like the Child Nutrition Programs. That choice is not reviewable under the APA. Even assuming that USDA has some discretionary authority to transfer funds to support SNAP benefits in the absence of an appropriation for SNAP, the determination of whether to use that authority to deplete funds from one congressionally mandated program to pay for another program with an insufficient appropriation falls squarely within the APA exception for decisions committed to agency discretion by law. 5 U.S.C. § 701(a)(2).

Congress directed that "[a]ssistance under this program shall be furnished to all eligible households," 7 U.S.C. § 2014(a)), but expressly directed that the Secretary "shall limit the value of those [SNAP] allotments issued to an amount *not in excess of the appropriation for such fiscal year*," *id.* § 2027(b) (emphasis added). The context clearly refers to the appropriation for the SNAP program, rather than other appropriations. *See id.* § 2013(a)(1) ("Subject to the availability of funds *appropriated under Section 2027 of this title*." (emphasis added)). Nothing in the SNAP statute contains any mandatory language directing the raiding of other USDA programs to fund a SNAP shortfall. Rather, the SNAP statute expressly provides that where allotments would exceed the annual appropriation, the Secretary shall

"direct State agencies to reduce the value of such allotments to be issued to households certified as eligible to participate in the supplemental nutrition assistance program to the extent necessary to comply with the provisions of this subsection." *Id.* § 2027(b). Thus, Congress clearly contemplated that USDA would reduce allotments when faced with a shortfall in annual appropriations. Any decision to instead fully fund the allotments using money sourced from another safety-net program, if permissible at all, would necessarily be discretionary.

The Supreme Court has long recognized that an agency's determination of how to allocate funds among competing priorities and recipients is classic discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Court explained that a funding decision is committed to agency discretion where it requires "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including whether "resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies; and, indeed, whether the agency has enough resources to fund a program at all." *Id.* (cleaned up). An "agency is far better equipped than the courts to

14

deal with the many variables involved in the proper ordering of its priorities." *Id.* The APA "gives the courts no leave to intrude." *Id.* Thus, "the decision about how the moneys" for programs "could best be distributed" is classically committed to agency discretion. *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751-52 (D.C. Cir. 2002).

The decision to transfer funds from one program to another program is in the heartland of this exception to APA review. Section 2257 authorizes (but nowhere requires) that an amount "[n]ot to exceed 7 per centum of the amounts appropriated for any fiscal year for the miscellaneous expenses of the work of any bureau, division, or office of the Department of Agriculture" can be transferred to another appropriation "but no more than 7 per centum shall be added to any one item of appropriation." 7 U.S.C. § 2257. The district court's conclusion that judicial review was appropriate was based on its incorrect understanding of the suit as presenting a dispute over how statutory provisions "authorize USDA to expend Section 32 funds." Dkt. 34 at 16. But while the statute provides for exceptions of that seven percent threshold "in cases of extraordinary emergency," *id.*, at no point does it make *any* such transfer mandatory. Rather, the choice to deplete one program to try and shore up another ticks

15

every box discussed in *Lincoln*: (1) complicated balancing of factors within the agency's purview; (2) consideration of best use of resources "on one program or another"; (3) whether USDA "is likely to succeed in fulfilling its statutory mandate"; and (4) "whether the agency has enough resources to fund a program at all." *See Lincoln*, 508 U.S. at 193; *see* Dkt. 14-2 ¶¶ 16-35 (laying out the challenges); Dkt. 21-1 ¶¶ 7-23 (laying out USDA's decisionmaking with respect to partial payment following initial order). Simply put, if depleting one program to bolster one without sufficient funds is not committed to agency discretion under the *Lincoln* principles, it is hard to see how any funding decision would be. And the extraordinary emergency authority under Section 2257 only reinforces this conclusion. *See, e.g.*, *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 25 (D.D.C. 2008) (explaining that language "giv[ing] the Secretary the authority—but not the duty—to [take an action on an] emergency basis" is committed to agency discretion); *accord United States v. Wiley's Cove Ranch*, 295 F.2d 436, 446 (8th Cir. 1961) (holding "certificate of [individual's] eligibility to receive benefits under the Emergency Feed Program" was committed to agency discretion).

B. Even if the APA permits review, the district court's order rested on an erroneous conclusion that the agency's decision was arbitrary and capricious or contrary to law. Under the APA standard, the agency's decision is presumed valid, and a court reviews only whether that decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

USDA reasonably decided against depleting "at least $4 billion from th[e] Child Nutrition funds to provide full SNAP benefits instead of reduced benefits for the month of November." Dkt. 21-1 ¶ 7. USDA "contemplated various factors" including (1) that Congress appropriated funds for the Child Nutrition Programs specifically (not generally for any program needing funds); (2) "the impact a transfer of the magnitude necessary to support SNAP would have on Child Nutrition Programs"; (3) "the likelihood (or lack thereof) of Congress's ability to appropriate additional billions of dollars for Child Nutrition Programs for FY26 to make up the funding shortfall"; and (4) the court orders at issue. *Id.* ¶ 8.

17

Ultimately, USDA decided "to protect full operation of Child Nutrition Programs throughout the fiscal year." *Id.* ¶ 9. Those Programs "provide critical, nutritionally-balanced meals and food assistance benefits to millions of children" with the National School Lunch Program serving "approximately 29 million children per day." *Id.* ¶ 10.

"[T]he $4 billion removed from Child Nutrition Programs for one month of SNAP benefits would be a permanent loss to Child Nutrition Programs for the entirety of their annual operations in FY26." *Id.* ¶ 17. "To make Child Nutrition Programs whole for FY26, Congress would need to appropriate an additional $4 billion in new budget authority." *Id.* ¶ 19. Such a shortfall would be "unprecedented and significant, *id.* ¶ 16, given that Congress's annual appropriation for the program is an "estimated $13.2 billion," *id.* ¶ 19. If Congress passes a continuing resolution, maintaining earlier levels of funding, or if Congress simply chooses to appropriate the sum originally anticipated, the Child Nutrition Programs would face a large shortfall. *See id.* ¶¶ 8-20. In sum, "creating a shortfall in Child Nutrition Programs funds to fund one month of SNAP benefits is an unacceptable risk, even considering the procedural difficulties with delivering a partial November SNAP payment, because shifting $4 billion

18

dollars to America's SNAP population merely shifts the problem to millions of America's low income children that receive their meals at school." *Id.* ¶ 22.

In exercising its statutory discretion, USDA also explained that transferring the money would "ignore" that Congress established a contingency fund for the SNAP program and provided the Child Nutrition Programs with sufficient funds to carry out their operations. *Id.* ¶ 21. The district court's conclusion that disbursement of Section 32 funds would not deprive Child Nutrition Programs of funding is plainly baseless. Approximately $23 billion of the approximately $25 billion of the Section 32 funds have been designated for the Child Nutrition Programs for FY2026. *See* Cong. Rsch. Serv., IF12193, Farm and Food Support Under USDA's Section 32 Account, https://www.congress.gov/crs_external _products/IF/PDF/IF12193/IF12193.5.pdf.[5] If $4 billion of those funds are transferred to cover the November SNAP allotment, absent an

---

[5] The district court stated that USDA "conflate[s] Section 32 funds with the Child Nutrition Programs to make it seem as though they go in tandem," citing to Section 32 of the Agricultural Adjustment Act Amendment of 1935. Dkt. 34 at 20. The court noted that "there is no statute prohibiting USDA from using the funds for other purposes. *Id.* But this

*Continued on next page.*

appropriation accounting for that shortfall, the Child Nutrition Programs will be significantly impaired. There is no provision to replenish the Child Nutrition Programs in the continuing resolution currently being considered in Congress, and it was well within USDA's discretion to determine that it would not raid one safety-net program, which provides nutritious meals to children who rely on schools for their meals, to support another.

The agency reasonably determined that maintaining appropriated funds for their intended purpose, when there is no suggestion that a deficit will be restored, is the proper course of action here. Indeed, to deplete the Child Nutrition Programs on the speculative hope that Congress will replenish the resulting shortfall, could itself be vulnerable to challenge under arbitrary and capricious review. The district court apparently assumed that Congress will appropriate such funds in the future and that it is therefore appropriate to direct disbursement of the funds now.  But that premise runs counter to the Appropriations Clause's requirement that "[n]o money shall be drawn from the Treasury, but in consequence of

---

ignores 7 U.S.C. § 612c-6(b)(1) directing the funds to Child Nutrition Programs.

Appropriations made by Law." U.S. Const. Art I, § 7, cl. 7. And it raises the specter of innumerable conflicting injunctions demanding that every plaintiff's unfunded benefit program be supported by moving money from elsewhere.

The district court also erred by concluding it was unreasonable for USDA to "choose to go down this path [of a partial payment] in light of the difficulties and delays attendant to making a partial payment." Dkt. 34 at 19. But in the separate case in Massachusetts, the States have admitted that some of them are technologically prepared to implement partial benefits immediately. Any delays on the part of the States, who are not party to this suit, that are not so prepared are beyond the control of USDA.

Finally, the court also tarred USDA's decision as arbitrary and capricious by pointing to President Trump's public comments warning that SNAP benefits would not be available unless Congress reopens the government and passes an appropriation. To the court, that was a capricious effort to withhold SNAP benefits for political purposes, exposing pretext in USDA's decision-making. Not at all. The President was simply stating the facts: There will soon be no money left in the SNAP reserves, and further benefits will not be available unless Congress

21

appropriates the funds. Unfortunately, by injecting itself with its erroneous short-term solution, the district court has scrambled ongoing political negotiations, extending the shutdown and thus undercutting its own objective of ensuring adequate funding for SNAP and all other crucial safety-net programs.

## III.    The Equities Favor a Stay

The remaining factors also weigh in favor of a stay.  The district court's order threatens significant and irreparable harm to the government, *see Nken*, 556 U.S. at 435, which outweighs any claimed injury to plaintiffs.

The Child Nutrition Programs, including the National School Lunch and Breakfast Programs, Summer Food Service Program, and Summer EBT (SUN Bucks), provide "critical, nutritionally-balanced meals and food assistance benefits to millions of children every day." Dkt. 14-2 at ¶ 10. Notably, the National School Lunch Program provides approximately 29 million children with low-cost or free school lunch every day. *Id.* Transferring these funds to "'top off' November SNAP allotments would leave Child Nutrition Programs with "an unprecedented and significant shortfall." Dkt. 14-2 at ¶ 16. Under current law, USDA will not receive another infusion of Section 32 funds until FY2027, and Congress has not

currently accounted for that shortfall in the pending continuing resolution. The district court discounted this harm on the ground that Congress could always address the shortfall later, but there is no guarantee that Congress would do so.

This damage to nonparties, including States and the beneficiaries of the Child Nutrition Programs, strongly counsels in favor of a stay. As explained in USDA's declaration, "shifting $4 billion dollars to America's SNAP population merely shifts the problem to millions of America's low income children that receive their meals at school." Dkt. 14-2 at ¶ 22.  This concern will be paramount particularly if the district court were to conclude that USDA should be required to tap these funds again in December to support SNAP if the lapse in appropriations continues. The district court's order replaces the agency's prudent choice in this situation—a temporary reduction in November SNAP benefits—with a significantly more tumultuous one with long-term consequences into next year. This Court should allow USDA to continue with the partial payment and not compel the agency to transfer billions of dollars from another safety net program with no certainty of their replenishment.

**CONCLUSION**

To the extent they require USDA to expend funds beyond the SNAP contingency fund, the Court should stay the district court's orders of October 31 and November 6 pending appeal and grant an immediate administrative stay.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney General*

MICHAEL S. RAAB
   */s/ Laura E. Myron*

LAURA E. MYRON
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7228*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

November 2025

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 4,741 words.  The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Book Antiqua typeface.

*/s/ Laura E. Myron*
LAURA E. MYRON

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Laura E. Myron*
LAURA E. MYRON