No. 25-2089

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

Rhode Island State Council of Churches, *et al.*,
*Plaintiffs-Appellees,*
v.

Brooke L. Rollins, in her official capacity as Secretary of the United States Department of Agriculture, *et al.*,
*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
No. 25-cv-569
The Honorable John J. McConnell, Jr.

## OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY

Kristin Bateman
Catherine M.A. Carroll
Jyoti Jasrasaria
Michael J. Torcello
Andrew Liang Bookbinder
Adnan Perwez
Robin F. Thurston
Skye L. Perryman
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
kbateman@democracyforward.org
ccarroll@democracyforward.org
jjasrasaria@democracyforward.org

mtorcello@democracyforward.org
abookbinder@democracyforward.org
aperwez@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

Amy R. Romero
Kevin Love Hubbard
DeLuca, Weizenbaum, Barry &
Revens, Ltd.
199 North Main Street
Providence, RI 02903
(401) 453-1500
amy@dwbrlaw.com
kevin@dwbrlaw.com
Cooperating Counsel, Lawyers'
Committee for Rhode Island

*Attorneys for Plaintiffs-Appellees*

**INTRODUCTION**

More than forty million people—approximately one in eight Americans—depend on the Supplemental Nutrition Assistance Program (SNAP) to feed themselves and their families. This includes 16 million children, 8 million elderly people, and 1.2 million veterans who live in households that receive SNAP benefits. For an entire week now, these families have gone without urgently needed assistance to meet their basic nutritional needs.

As the district court determined in its first TRO order—and as Defendants do not now dispute—Defendants' decision in late October to suspend November SNAP payments was contrary to law and arbitrary and capricious. Defendants' stay motion does not dispute that they were obligated to use the SNAP contingency funds toward November benefits, and Defendants do not dispute that they have authority to make up the shortfall and ease people's hunger today by tapping into additional funds in Child Nutrition accounts derived from Section 32 and other appropriations. They also do not dispute that, as a remedy for their unlawful action and to stem the grave irreparable harm it caused, the district court acted within its discretion in ordering that Defendants must either (1) fully fund November SNAP benefits using the funds available or (2) deplete the SNAP contingency funds to provide partial payments, but only if they offered a non-arbitrary-and-capricious explanation for that choice, and only if they first "expeditiously resolved" the

1

obstacles and delays attending partial payments so as to ensure timely payments by November 5.

Defendants' response failed to comply with that order, and the district court did not abuse its discretion in concluding that their decision to make partial payments despite the attending weeks or months of delays was arbitrary and that—given the emergency circumstances of the government's own creation—this left only one choice available to mitigate the irreparable harm to Plaintiffs and millions of other Americans: utilize the undisputedly available funds to make full November payments.

Defendants' claimed desire to conserve those funds for Child Nutrition programs—programs that have $23 billion on hand and require only $3 billion per month to operate—is facially implausible. Tapping Child Nutrition funds poses no realistic threat of leaving those programs underfunded. The Administrative Procedure Act (APA) did not preclude the district court from entering a remedy for Defendants' arbitrary and pretextual refusal to provide full funding to provide relief for children and families who are going hungry today. Time is of the essence: the stay pending appeal and administrative stay should be denied.

## BACKGROUND

1.      Congress established SNAP to "alleviate . . . hunger and malnutrition" among low-income households by enabling them to "obtain a more nutritious diet

through normal channels of trade," 7 U.S.C. § 2011, and provided that "[a]ssistance under this program shall be furnished to all eligible households who make application for such participation," *id.* § 2014(a). In 2024, SNAP provided an average of 41.7 million people per month with an allotment to buy food at approved retailers. USDA, *The Food and Nutrition Assistance Landscape: Fiscal Year 2024 Annual Report,* at 11 (July 2025), https://perma.cc/BV5D-ZM98. The vast majority of SNAP participants are in households with a child, an elderly individual, or a person with a disability. USDA, *Characteristics of SNAP Households: Fiscal Year 2023* (May 2, 2025), https://perma.cc/X4EYB8W7. The Department of Agriculture (USDA) and States jointly administer SNAP. 7 U.S.C. §§ 2018, 2020.

2. Congress generally funds SNAP through appropriations bills. Recent appropriations have included a contingency fund that Congress directed USDA to hold in reserve to use if necessary. Pub. L. No. 118-42, 138 Stat. 25, 93 (2024); Pub. L. No. 119-4, 139 Stat. 9, 13 (2025). Those funds totaled $6 billion at the start of this fiscal year. ECF No. 21-1 ¶ 2.

In 7 U.S.C. § 2257, Congress also authorized USDA to use appropriated funds "interchangeably" within a division (such as the division covering USDA's nutrition programs), subject to a percentage limit that can be waived "in cases of extraordinary emergency." The account for Child Nutrition programs—which

Defendants concede could be used for SNAP—has over $23 billion available, including money from a fund created by section 32 of the Agricultural Adjustment Act amendments of 1935, as well as annual Child Nutrition appropriations. *See* ECF No. 22 at 19 n.5. USDA previously used this account to fund the Women, Infants & Children (WIC) program during the shutdown. ECF No. 21-1 ¶ 20.

Congress has not yet passed appropriations for SNAP for the current fiscal year. Previous administrations, including the first Trump administration, recognized that the contingency funds appropriated by Congress were available to fund SNAP in these circumstances. *See* Letter from Jessica Shahin to FNS Regions, Early Issuance of February 2019 SNAP Benefits – Questions & Answers #2 (Jan. 14, 2019), https://perma.cc/9HCL-5GCU.

But on October 10, the agency abruptly reversed course. USDA issued guidance informing state officials that "if the current lapse in appropriations continues, there will be insufficient funds to pay full November SNAP benefits." USDA, Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025 (Oct. 10, 2025), https://perma.cc/LDG4-DQMC. On October 24, USDA stated that it was "suspending all November 2025 benefit allotments" pending further appropriations. USDA, Supplemental Nutrition Assistance Program (SNAP) Benefit and Administrative Expense Update for November 2025 (Oct. 24, 2025),

https://perma.cc/4VPF-4ANN. Meanwhile, a banner on USDA's website claimed "the well has run dry" to fund the SNAP program, blamed "Senate Democrats" for not voting to "reopen the government so mothers, babies, and the most vulnerable among us can receive critical nutrition assistance," and stated that "there will be no benefits issued November 01." U.S. Dep't of Agric., https://perma.cc/BL88-8QU6.

3. Plaintiffs—a national union with SNAP recipient members; cities that are diverting critical resources to support their SNAP recipient residents; churches and nonprofits that provide emergency food assistance and other support; and food retailers that rely on SNAP purchases—filed this lawsuit on October 30, alleging that Defendants' suspension of SNAP benefits violated the APA. Plaintiffs simultaneously moved for a temporary restraining order and submitted 24 uncontroverted declarations establishing that the suspension of SNAP benefits would mean beneficiaries going hungry; small businesses losing unrecoverable revenue; and churches, nonprofits, and cities suffering direct harm to their missions and limited resources.

The district court held a hearing on October 31 and orally granted a TRO. The next day, the court issued a written decision. ECF No. 19. The court concluded Plaintiffs were likely to show that the suspension of SNAP benefits violated the APA, and it emphasized that irreparable harm "exists without timely payment of SNAP benefits," quoting Defendants' own position that partial benefits "would be

exceedingly difficult, highly disruptive, and delayed." *Id.* at 4-5. The court ordered

that "the Government should, within its discretion, find the additional funds

necessary (beyond the contingency funds) to fully fund the November SNAP

payments," noting that the section 32-created fund with over $23 billion in it as of

October 8 was available for SNAP funding. *Id.* The Court also ordered that if

Defendants decided not to use their discretion to fully fund November SNAP

benefits, they "must expeditiously resolve the administrative and clerical burdens

[they] described in [their] papers, but under no circumstances shall the partial

payments be made later than Wednesday, November 5." *Id.* at 5-6. The Court

further required that a partial funding decision could not be arbitrary or capricious.

*Id.* at 5 n.6.

4.      On November 3, Defendants filed a status report stating that they

would make only partial payments. ECF No. 21. Defendants acknowledged that

partial payments would not go out to people needing food by November 5, as the

Court had ordered, but would be delayed in some states by "up to several months."

ECF No. 21-1 ¶ 29. In a declaration, a USDA official attested that the total amount

of remaining contingency funds—$4.65 billion—would cover 50 percent of

eligible households' November SNAP benefits. *Id.* ¶ 5.

The declaration also explained that USDA had decided not to use funds from

the Child Nutrition account to fully fund November SNAP benefits. Although

USDA acknowledged its authority to use those funds, *id.* ¶ 23, it declined to do so because those funds "must remain available to protect full operation of Child Nutrition Programs throughout the fiscal year, instead of being used for SNAP benefits." *Id.* ¶¶ 7, 9. USDA asserted that using a small portion of the Child Nutrition funds for SNAP "would leave an unprecedented gap in Child Nutrition funding that Congress has never had to fill with annual appropriations, and USDA cannot predict what Congress will do under these circumstances." *Id.* USDA insisted that it would be disregarding statutory provisions "if it were to repurpose funds Congress explicitly intended be used only for Child Nutrition Programs." *Id.* ¶ 21.

The declaration recognized the enormous procedural difficulties for States to administer reduced SNAP benefits for November, which "could lead to payment errors and significant delays." *Id.* ¶ 28. Further, "[f]or at least some states, USDA's understanding is that the system changes States must implement to provide the reduced benefit amounts will take anywhere from a few weeks to up to several months." *Id.* ¶ 29. The declaration did not, however, address what those delays meant for people needing food assistance or consider whether those consequences warranted a different decision. *Id.* ¶¶ 24-30.

On November 4, Plaintiffs moved to enforce the TRO or, in the alternative, for a new TRO on the ground that Defendants' choice not to fully fund SNAP was

arbitrary and capricious. ECF No. 22. Shortly after Plaintiffs filed that motion, the President posted on social media that "SNAP BENEFITS . . . will be given only when the Radical Left Democrats open up government, which they can easily do, and not before!" Donald J. Trump (@realDonaldTrump), TruthSocial (Nov. 4, 2025, 11:06 AM), https://perma.cc/6QAN-54YU. On November 5, Plaintiffs filed a supplemental notice and declaration pointing out that the guidance USDA had issued—reducing allotments by 50%—would not deplete the full contingency fund, further indicating that the agency's action violated the TRO and was arbitrary and capricious. ECF Nos. 27, 27-1. Defendants responded that they had noticed the error and issued updated tables to account for a reduction of 35 percent rather than 50 percent. ECF No. 28.

5.     The district court held a hearing on November 6 and orally granted Plaintiffs' motion, followed shortly by a written order. ECF No. 34. The court first found that Defendants had not complied with the court's October 31 and November 1 orders, which had provided Defendants with two options: (1) use available funds to provide full SNAP benefits, or (2) use only the contingency funds to provide partial SNAP benefits, in which case the government would have to "expeditiously resolve the administrative and clerical burdens it described in its papers," and "under no circumstances shall the partial payments be made later than Wednesday, November 5." *Id.* at 11-12. "[T]he record [was] clear that the

Defendants did neither." *Id.* at 12. The court rejected Defendants' attempt to shift blame to the States, explaining that "Defendants knew that, at the time they chose [to provide only partial benefits], they would be prolonging implementation and frustrating the very purpose of the TRO, which is to provide timely relief and prevent further irreparable harm." *Id.* at 13. The court therefore granted Plaintiffs' motion to enforce. *Id.*

Additionally, the district court issued a second TRO on the ground that the agency's decision to provide only partial benefits was arbitrary and capricious. *Id.* The court rejected Defendants' argument that the decision is committed to agency discretion by law, explaining that the "rare circumstances" that would eliminate judicial review were not present. *Id.* at 15-16 (citation omitted). On the merits, USDA's decision to provide only partial benefits was likely arbitrary and capricious for four reasons: (1) USDA disregarded the "increased harm" that SNAP beneficiaries would suffer if forced to wait months for benefits; (2) USDA misapprehended its statutory authority by assuming that using section 32 funds for purposes other than the Child Nutrition program would "stray from Congressional intent"; (3) USDA's contention that using section 32 funds for SNAP would risk leaving Child Nutrition programs unfunded was implausible and contrary to the evidence; and (4) USDA's asserted reasons for the decision were pretextual "given the numerous statements made in recent weeks by Trump administration officials

who make clear that SNAP benefits are being withheld for political reasons." *Id.* at 19-24.

The district court also concluded that the irreparable harm it had previously found "only increased due to the Defendants' failure to comply with the Court's prior order," and that the balance of equities and public interest weighed "strongly in the Plaintiffs' favor." *Id.* The court accordingly granted a second TRO. *Id.*

As a remedy for both the motion to enforce and second TRO, the district court ordered Defendants to make full SNAP payments to the States by November 7, using available section 32 funds to supplement the contingency funds. *Id.*

## STANDARD OF REVIEW

A stay pending appeal is appropriate only if the applicant "has made a strong showing" that (1) its appeal will "likely … succeed on the merits"; (2) it "will be irreparably injured absent a stay"; (3) "issuance of the stay will [not] substantially injure the other parties"; and (4) the stay would be in "the public interest." *Does 13 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022). "[T]he burden is on the … applicant to show" these factors "favor a stay." *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024).

This Court "will uphold a decision to grant" preliminary relief "unless it constitutes an abuse of discretion." *Comcast of Me./N.H., Inc. v. Mills*, 988 F.3d

607, 611 (1st Cir. 2021). Findings of fact are reviewed for clear error and conclusions of law de novo. *Id.*

## ARGUMENT

### I.    The Government Is Not Likely To Succeed on the Merits

Notably, Defendants do not challenge the choice put to them by the district court's first TRO. They do not argue that the court abused its discretion in requiring them either to fully fund SNAP for November, or to partially fund it, but only if Defendants could do so expeditiously. That is a critical concession on Defendants' part, because they accept the premise that if they chose to fund SNAP only partially, they had to do so in a way that immediately overcame the bureaucratic obstacles they had represented to the district court as almost insuperable. Yet Defendants then purported to choose the latter option—but with complete disregard for the conditions the district court had attached to it. Defendants' notice of compliance instead asserted that States would experience "procedural difficulties" in making partial payments and that it could take "up to several months" for some States to implement the necessary changes. ECF No. 21-1 ¶¶ 24, 29. These were precisely the same obstacles Defendants had described in their original papers, see ECF No. 14-2 ¶¶ 22-28, yet Defendants made no attempt to "expeditiously resolve" them as the court had ordered, ECF No. 19 at 5.

Defendants' current situation, therefore, is entirely the product of their own making. They purported to comply with an order of the district court in a manner that was not compliant; having done so, they cannot complain that the district court ordered them to take the other path—especially since they do not argue to this Court that the district court's choice of remedies in the first order was improper. Their contrary arguments fail.[1]

### A. Whether Defendants complied with the first TRO and the APA's requirement of reasoned decisionmaking is judicially reviewable

Defendants' decision in response to the first TRO not to fully fund November SNAP benefits is subject to review under the APA. As an initial matter, Defendants cite no authority for their supposition that judicial review principles under the APA could bar a court from determining whether a party had complied with an uncontested injunction. And as to APA review for arbitrary and capriciousness, even where an agency is afforded broad discretion, the APA embodies a "strong presumption of judicial review." *Marasco & Nesselbush LLP v. Collins*, 6 F.4th 150, 170 (1st Cir. 2021); *see Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018). As the Supreme Court has explained, the exception to the presumption of reviewability for actions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), is "quite narrow[], restrict[ed] ... to those

---

[1] Nor do Defendants challenge the scope of relief ordered by the district court. Any such argument is therefore forfeited.

rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Department of Commerce v. New York*, 588 U.S. 752, 772 (2019) (quotation marks omitted)—that is, where there is simply "'no law to apply.'" *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

This case does not clear that high bar. Congress's instruction that SNAP assistance "shall be furnished to all eligible households who make application for such participation," 7 U.S.C. § 2014(a), provides a "clear and specific directive[]" calling for USDA to fund SNAP in full when funds are available, as they are here. *Overton Park*, 401 U.S. at 411. And Congress identified purposes for which Child Nutrition Program funds "shall be available" for transfer to other programs, including SNAP. 7 U.S.C. § 2257. Reinforcing this direction, Congress also enacted a declaration of policy setting out the objective of the SNAP program to alleviate hunger and malnutrition by increasing the food purchasing power of all eligible people who apply. *Id.* § 2011. These provisions "cabin [USDA's] discretion" to withhold SNAP funding and provide "meaningful standard[s] by which to judge the [agency]'s action." *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 98 (1st Cir. 2025); *see also Mach Mining LLC v. EEOC*, 575 U.S. 480, 487-

488 (2015) (EEOC's wide latitude over Title VII conciliation process would not preclude review of an outright failure to attempt conciliation at all).

*Lincoln v. Vigil*, 508 U.S. 182 (1993), is readily distinguishable. There, the Indian Health Service's (IHS) termination of the Indian Children's Program could not be reviewed under the APA because the decision about how to allocate funds from the agency's annual lump-sum appropriation was committed to IHS's unreviewable discretion. *Id.* at 191-95. Unlike in this case, the relevant appropriations measures in *Lincoln* "d[id] not so much as mention" the terminated program, and IHS's authorizing statutes "sp[oke] about Indian health only in general terms" without obligating the agency to undertake any particular program. *Id.* at 194; *see id.* at 185. Congress had not "statutorily restricted what c[ould] be done with those funds" at all, *id.* at 192, let alone established a program and directed—as it did here—that funds should be used to provide food assistance through that program to all eligible applicants.

Here, in contrast, Congress established SNAP as an entitlement—an obligation to be fulfilled so long as funds are available—and established that funds could be transferred from the Child Nutrition Program funds under § 2257 to fulfill that obligation. Those directives provide meaningful standards to apply in determining whether Defendants have acted consistent with congressional intent

and reasonably considered all relevant factors. *See Overton Park*, 401 U.S. at 411-413; *Weyerhaeuser Co.*, 586 U.S. at 25.[2]

Defendants' analogy to *Lincoln* rests on the contention that these provisions provide no meaningful guide for judging whether SNAP benefits should be paid when funds are available. ECF 26 at 9-10, 11-12. That reading lacks merit: Defendants' suggestion that USDA "shall limit the value of" SNAP allotments to only those funds appropriated for the SNAP program under Section 2027, Mot. at 13-14, contravenes their primary contention that using Child Nutrition funds to supplement the SNAP appropriations is within USDA's discretion—not to mention with Congress's own decision to allow for transfers to SNAP from the Child Nutrition funds. Indeed, Defendants' position would render § 2257 meaningless with respect to SNAP. And no one suggests that diverting funds to SNAP to address the current crisis would ultimately result in higher allotments than the amount Congress ultimately decides to appropriate for this fiscal year.

---

[2] In *Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002), Congress directed the agency to use the funds at issue "to provide assistance directly to ... dairy producers, in a manner determined appropriate by the Secretary." *Id.* at 751. In holding that the agency's determination of the "appropriate" "manner" in which to provide assistance was committed to the agency's unreviewable discretion, the court did not suggest that the agency could arbitrarily refuse to use the funds to assist dairy producers altogether; indeed, it was uncontested that—unlike here—the Secretary had fulfilled that statutory duty. *Id.* at 752.

In any event, for reviewability purposes, there plainly is "law to apply" to decide whether Defendants' understanding is correct: Whether the statute calls for SNAP benefits to be furnished if funds are available is a legal question a court can resolve using ordinary tools of statutory interpretation. *E.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-401 (2024). And even assuming the statute affords USDA discretion to balance competing needs when deciding whether to transfer funds under § 2257, an action is not unreviewable merely because it involves discretion. *See Weyerhaeuser*, 598 U.S. at 24; *Mach Mining*, 575 U.S. at 488. Here, the statutory framework provides a meaningful standard against which to judge the exercise of that discretion.

## B. Defendants' decision to provide only partial November SNAP benefits after weeks' delay did not comply with the district court's order

The district court did not abuse its discretion in concluding that Defendants did not comply with the first TRO. Indeed, that decision was plainly correct, and Defendants' motion hardly even addresses it.

The terms of the district court's TRO were clear. The court gave Defendants two options for compliance. First, Defendants could provide full SNAP benefits by using the contingency funds and other available funds, including Child Nutrition funds. ECF No. 19 at 5. Second, Defendants could choose to provide only partial benefits. *Id.* If Defendants chose the latter option, however, the court made clear that they "must expeditiously resolve the administrative and clerical burdens [they]

16

described in [their] papers," ensuring that "under no circumstances shall the partial payments be made later than Wednesday, November 5." *Id.* at 5-6.

Defendants suggest they complied by depleting the contingency fund and instead choosing partial funding. Mot. at 12-13. That argument ignores the TRO's plain requirement that, if Defendants wanted to avail themselves of the partial funding option, they had to resolve the hurdles associated with that option to ensure prompt payments. It is undisputed that Defendants did not do so. And as the district court pointed out, Defendants "could have begun working to resolve the administrative hurdles once the lapse in appropriations occurred, or even before." ECF No. 19 at 13. Defendants were fully aware that, in choosing the path they took, they "would be prolonging implementation and frustrating the very purpose of the TRO," even though the alternative option—full payments—"provided a faster and more practical means of compliance." *Id.* Defendants do not now contest any of these findings.

## C. Defendants' decision not to provide full November SNAP benefits was arbitrary and capricious

The district court also correctly concluded that Defendants' decision to provide only partial SNAP benefits was arbitrary and capricious.

*First,* Defendants primarily claim to have withheld full payments for November SNAP benefits because it would create a "significant shortfall" in the Child Nutrition account and thus "shift the problem" to children who rely on

school lunches. ECF No. 21-1 ¶¶ 16, 22. This reasoning is facially implausible. There is currently approximately $23.35 billion available in the Child Nutrition account,[3] and in the government's own telling, Child Nutrition programs require just over $3 billion per month. *See id.* ¶ 15. If the government transferred the roughly $4 billion necessary to make full November SNAP payments, $19.35 billion would remain—enough to fully fund Child Nutrition through May and beyond, even if the current lapse in appropriations lasted that long.

The government is wrong, moreover, to contend that the transfer would "be a permanent loss" to Child Nutrition programs for the whole fiscal year. ECF No. 21-1 ¶ 17. It would be a permanent loss if and only if Congress—contrary to all past practice—took no action to fill the gap. Speculation about such unlikely events is not a basis for reasoned decisionmaking. Defendants' claim (at 20) that "the continuing resolution currently being considered" would do nothing to address the shortfall, but that is flat wrong. The continuing resolution under consideration contains standard language for appropriated entitlements like Child Nutrition that would provide whatever funding is necessary to provide full benefits to anyone who is eligible. H.R. 5371 § 111(a) (119th Cong.) (providing that "activities shall be continued at the rate to maintain program levels under current law"). Under that standard language, there could by definition be no shortfall.

---

[3] *See* ECF No. 22-1 at 19 n.5 (explaining calculation of $23.35 billion figure).

Defendants' heavy reliance on the claimed need to protect Child Nutrition "runs counter to the evidence before the agency" and "is so implausible that it could not be ascribed to a difference in view," *State Farm*, 463 U.S. at 43. As the district court put it, "it defies belief that the Defendants would prioritize a hypothetical disruption in child food assistance, projected to occur no sooner than May of 2026 (if at all), over the very real and immediate risk of children being deprived of their food assistance today." Order at 23.

*Second*, Defendants failed entirely to account for the practical consequences of their decision. While Defendants acknowledged that partial payments would result in substantial delay in some States (ECF No. 21-1 ¶ 29), they did not account for the real-world impacts this would have—namely, that individuals and families would go without needed food for weeks or even months. ECF No. 34 at 19. Nor did they offer any justification for choosing the option that, by their own admission, would make it practically impossible for people to receive urgently needed food assistance. They therefore failed to consider an "important aspect of the problem," *State Farm*, 463 U.S. at 43, and failed to consider the "serious reliance interests" of the children, seniors, and others who rely on SNAP for basic nutrition and need those funds now, *Regents*, 591 U.S. at 30.

*Third*, Defendants based the decision on a mistaken belief that tapping into Child Nutrition funding would "stray from Congressional intent" because Congress

provided other "contingency funds at a level it has deemed sufficient." ECF No. 21-1 ¶ 21. But, in § 2257, Congress also made funds "interchangeab[le]" within the individual USDA bureaus—allowing USDA to transfer funds from one nutrition program (such as Child Nutrition) to another (such as SNAP), as the same division administers them both. *See* 7 U.S.C. § 2257. It doesn't transgress congressional intent to exercise authority Congress granted.

*Fourth*, Defendants' asserted reasons were "pretextual" and Defendants are actually withholding SNAP "for political reasons" (Order at 24)— straightforwardly arbitrary and capricious action. *See Level the Playing Field v. FEC*, 961 F.3d 462, 464 (D.C. Cir. 2020) (holding that "decisions featuring … partisanship" are arbitrary and capricious). USDA's website prominently displayed a banner blaming "Senate Democrats" for the fact that the SNAP "well has run dry," Dep't of Agric., https://perma.cc/BL88-8QU6, and the President posted that people would not get SNAP unless "the Radical Left Democrats open up government," @realDonaldTrump, TruthSocial (Nov. 4, 2025, 11:06 AM), https://perma.cc/6QAN-54YU. These statements demonstrate that Defendants' true motives were classic arbitrary and capricious action.

## II. Defendants face no injury at all, but Plaintiffs and the public will be irreparably harmed by a stay.

Defendants' bald assertion that they will face irreparable injury is entirely unsupported, and they callously disregard the grave harm that will befall Plaintiffs

and millions of Americans if they succeed. Absent a stay, Defendants will merely be required to draw on a fraction of the Child Nutrition account to fund SNAP for this month, which their declarant already confirmed is allowed. Suppl. Penn. Decl. ¶ 23. Defendants' concern that Congress may refuse to fund Child Nutrition programs until next summer and that any shortfall in the Child Nutrition fund will be "paramount particularly if the district court were to conclude that USDA should be required to tap these funds again in December to support SNAP if the lapse in appropriations continues," Mot. at 23—which is outside the scope of any requested relief—says nothing of harm to *Defendants* and is far-fetched nonetheless. Because the Defendants bear the burden of demonstrating that they "*will* be irreparably injured absent a stay," *Nken*, 556 U.S. at 434 (emphasis added), their speculative and conclusory statements cannot suffice.

On the other hand, Plaintiffs and the public will be severely and irreparably harmed if Defendants are granted a stay, even a brief one. Every moment that the district court's order goes unenforced, "SNAP recipients—16 million of whom are children—will go hungry [because] they [will] not receive their SNAP benefits." Order at 23, ECF No. 34. Denying subsistence benefits to eligible people deprives them "of the very means by which to live[.]" *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). That will injure not only SNAP beneficiaries like Plaintiff SEIU's members, *see* Medina Decl. & Attach., ECF 3-19, but also a range of entities

dedicated to addressing hunger in their communities. Nonprofits that offer emergency food assistance are already unable to fulfill their missions—despite diverting significant resources from other programs to meet the influx of need. *See, e.g.*, Fernandez Decl. ¶ 4, 18, 25, ECF No. 3-11. Service providers that assist with SNAP benefits are being inundated with requests, which have strained their staff while crippling their ability to serve other needs. *See, e.g.*, Nicolato Decl. ¶¶ 17, 18, ECF No. 3-13. Cities are taking unprecedented steps to feed their communities, redirecting resources from core city services to do so. Rivera Decl. ¶¶ 18-20, ECF No. 3-4; Long Decl. ¶¶ 11, 17, ECF No. 4. And small businesses are losing significant revenue without SNAP purchases, which puts them at risk of cutting employee hours or even closing their doors. Cheatham Decl. ¶¶ 12, 13, ECF No. 3-14.

As the district court recognized, "[t]here is no doubt and it is beyond argument that irreparable harm will begin to occur, if it hasn't already occurred, in the terror it has caused some people about the availability of funding for food for their family." TRO Hr'g Tr. at 38:14-20. The final three *Nken* factors weigh decidedly against granting Defendants' requested relief.

## CONCLUSION

The Court should deny Defendants' motion and not allow them to further delay getting vital food assistance to individuals and families who need it now.

November 7, 2025

Respectfully submitted,

/s/ Amy R. Romero
Amy R. Romero
Kevin Love Hubbard
DeLuca, Weizenbaum,
    Barry & Revens, Ltd.
199 North Main Street
Providence, RI 02903
(401) 453-1500
amy@dwbrlaw.com
kevin@dwbrlaw.com
Cooperating Counsel, Lawyers' Committee
for Rhode Island

Kristin Bateman
Catherine M.A. Carroll
Jyoti Jasrasaria
Michael J. Torcello
Andrew Liang Bookbinder
Adnan Perwez
Robin F. Thurston
Skye L. Perryman
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
kbateman@democracyforward.org
ccarroll@democracyforward.org
jjasrasaria@democracyforward.org
mtorcello@democracyforward.org
abookbinder@democracyforward.org
aperwez@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Attorneys for Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the forgoing Opposition to the Government's Emergency Motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5162 words. The opposition complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word version 16 in proportionally spaced 14 point Times New Roman typeface.

/s/ Amy R. Romero
Amy R. Romero

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2025, I electronically filed the foregoing Opposition to the Government's Emergency Motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Amy R. Romero
Amy R. Romero